UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-11444-RWZ

DUNKIN' DONUTS FRANCHISED RESTAURANTS, LLC
a Delaware Limited Liability Company, *et al.*

v.

AGAWAM DONUTS, INC., *et al.*

MEMORANDUM OF DECISION AND ORDER

March 5, 2008

ZOBEL, D.J.

Plaintiffs (collectively, "Dunkin'")[1] franchise independent businesspersons to operate Dunkin' Donuts and Baskin-Robbins shops throughout the United States. Dunkin' entered into fifty-two franchise agreements with defendants (collectively, "Franchisees")[2] during the period from 1996 through 2007. On August 6, 2007, Dunkin' terminated all fifty-two franchises, effective immediately, citing defendants' alleged violations of federal labor, tax and immigration laws. It filed this action the same day, alleging, inter alia, breach of the franchise agreements. Defendants have moved for summary judgment, arguing that the terminations are invalid because Dunkin' did not

---

[1] "Dunkin'" includes Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts Franchising LLC; DD IP Holder LLC; Baskin-Robbins Franchised Shops LLC; Baskin-Robbins Franchising LLC; BR IP Holder LLC; DB Real Estate Assets I LLC; and DB Real Estate Assets II LLC.

[2] "Franchisees" includes Agawam Donuts, Inc.; B.E. Donuts, Inc.; Belmont Donuts, Inc.; Derek Donuts, Inc.; J.A. Donuts, Inc.; Jessica Donuts, Inc.; JNS Commissary, Inc.; Lori Donuts, Inc.; LPJ Donuts, Inc.; Rocky Donuts, Inc.; Springfield Donuts, Inc.; Supermarket Donuts, Inc.; West Side Donuts, Inc.; Fletcher Donuts, LLC; John Salema; Jessica Salema; Derek Salema; Peter Martins; Lori Martins; and Alexander DaSilva.

have sufficient "proof" that the Franchisees had committed a felony or other crime injurious to Dunkin's goodwill at the time of termination.  For the reasons discussed below, defendants' motion is denied.

**I. Background**

The provisions of the fifty-two franchise agreements terminated by Dunkin' are similar, but not identical.  All of the agreements follow one of two template versions, which the parties have termed the "1998 Agreement" and the "2001 Agreement."  Eleven of the agreements contain the default and termination provisions found in the 1998 Agreement.  The remaining forty-one agreements contain the default and termination provisions found in the 2001 Agreement.  (See Aff. of Erica A. Fuller, Esq. (Docket # 67) ¶¶ 7, 9.)

Dunkin' terminated all of the franchises pursuant to the 2001 Agreement, identifying five bases for termination: (1) failure to comply with the "obey all laws" provision of ¶ 5.1.7, which mandates compliance with all civil and criminal laws pertaining to, inter alia, employment and taxation; (2) performance of an act injurious or prejudicial to Dunkin's goodwill, in violation of ¶ 8.0.1; (3) commission of a felony, crime involving moral turpitude, or other crime injurious to Dunkin's goodwill, pursuant to ¶ 9.0.2; (4) allowance of use of Dunkin' shops or premises for any illegal or unauthorized purpose, pursuant to ¶ 9.0.3; and (5) failing to keep accurate books and records, in violation of ¶ 5.2.[3]

---

[3] The 2001 Agreement contains a "cross-default" provision which allows for the termination of all affiliated franchise agreements upon the termination of one agreement due to the franchisee's default.  (See 2001 Agreement (Docket # 69, Ex. 7)

Paragraph 9 of the 2001 Agreement provides, in relevant part:

9.0     FRANCHISEE shall be in default under this Agreement:

. . .

9.0.2    If FRANCHISEE is convicted of or pleads guilty or "nolo contendere" to a felony, a crime involving moral turpitude, or any other crime or offense that FRANCHISOR believes is injurious to the System(s), the Proprietary Marks or the goodwill associated therewith, or if FRANCHISOR has proof that FRANCHISEE has committed such a felony, crime or offense;

. . .

9.1     <u>Thirty Day Cure Period</u>. Except as otherwise provided in this Section 9, FRANCHISEE shall have the right to cure FRANCHISEE's default under this Agreement within thirty (30) days after written notice of default from FRANCHISOR is delivered pursuant to paragraph 14 hereof. Notwithstanding the foregoing, the following lesser periods shall apply under the circumstances described:

. . .

9.1.4    <u>No Cure Period.</u> No cure period shall be available if FRANCHISEE is in default under any paragraph designated 9.0.1 through 9.0.4 above; or if FRANCHISEE abandons the Unit; or if FRANCHISEE intentionally under-reports Gross Sales, falsifies financial data or otherwise commits an act of fraud with respect to FRANCHISEE's acquisition of this Franchise or its rights or obligations under this Agreement . . . .

9.4     <u>Termination.</u> . . . . Notwithstanding the foregoing, this Agreement shall immediately terminate upon the occurrence of any event set forth in paragraphs 9.0.1 through 9.0.4 or paragraph 9.1.4, without notice or opportunity to cure or notice of termination . . . .

(2001 Agreement ¶ 9.)

**II. Discussion**

---

¶ 9.0.4.) Dunkin' alleges that the fifty-two franchises at issue in the instant suit are affiliated.

Summary judgment is appropriate if "there is no genuine issue of material fact and the [] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Defendants' motion for summary judgment, which is premised upon the insufficiency of Dunkin's "proof" under ¶ 9.0.2 and Dunkin's failure to provide notice and a thirty-day period to cure defaults under ¶ 9.1,[4] fails because it ignores ¶ 9.1.4. Although defendants expend considerable energy arguing that Dunkin's "proof" of their alleged violations of federal tax, employment and immigration laws is insufficient, ¶ 9.0.2 is only one of several grounds for termination of the agreements. As Dunkin' notes, ¶ 9.1.4 permits termination of the agreements without an opportunity to cure if the franchisee "falsifies financial data or otherwise commits an act of fraud" with respect to its obligations under the franchise agreement. (Pls.' Mem. of Law in Opp. to Defs.' Mot. for Summ. J. (Docket # 88), 10-11.) Paragraph 9.1.4, unlike ¶ 9.0.2, does not require Dunkin' to have any "proof" of Franchisees' falsification of financial data or commission of fraud prior to terminating the franchise agreements.[5]

Defendants assert that Dunkin' did not rely upon ¶ 9.1.4 in its Notice of

---

[4] Dunkin' maintains that its termination notice provided an opportunity to cure to the extent such opportunity was legally required and Franchisees' defaults were curable. Defendants argue that the letter provided insufficient details regarding their alleged defaults, rendering them unable to cure. The court does not address this issue because, as discussed <u>infra</u>, Dunkin' could terminate without notice pursuant to Paragraph 9.1.4.

[5] The 1998 Agreement contains the same provision. (<u>See</u> 1998 Agreement (Docket # 69, Ex. 6) ¶ 9.1.3 ("No cure period shall be available if FRANCHISEE . . . falsifies financial data or otherwise commits an act of fraud with respect to its rights and obligations under this Agreement . . .").)

Termination or Complaint and accordingly cannot now rely upon it.  (See Reply Mem. in Supp. of Defs.' Mot. for Summ. J. (Docket # 97), 10.)  This assertion is patently false. The provision is referenced by Dunkin' both in its Notice of Termination and its Complaint.  (See Notice of Default and Termination, Aug. 6, 2007 (Docket # 69, Ex. 8, 6) ("Each of the above breaches constitutes a default under Paragraph 9 of the Franchise Agreements and common law fraud.  Furthermore, pursuant to Paragraph 9.1.4 of the Franchise Agreements, and as a matter of law, these breaches and fraud cannot be cured and are grounds for termination . . . ."); Complaint (Docket # 1) ¶ 56 ("Under Paragraph 9.1.4 of the Franchise Agreements, no cure period is available if Defendants . . . commit an act of fraud with respect to their obligations under the Agreement.").)  Defendants' alternative argument, contained in one paragraph of its brief, that the "fraud" contemplated by ¶ 9.1.4 relates solely to the under-reporting of sales to reduce royalties, is unsupported by both the record and the plain terms of the contract.  (See 2001 Agreement ¶ 9.1.4 (allowing for immediate termination for an "act of fraud with respect to FRANCHISEE's . . . rights or obligations under this Agreement") (emphasis added); see also Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc., 139 F. Supp. 2d 147, 155 (D. Mass. 2001) (finding franchisee's fraudulent tax filings qualified as "falsification of financial data" permitting termination of the parties' franchise agreement without an opportunity to cure).)[6]

---

[6] Dunkin' alternatively argues that, in any event, a notice and cure period was not required for defendants' alleged breaches of the "obey all laws" and goodwill provisions because they were of such a grave nature as to be "uncurable."  See, e.g., Gav-Stra Donuts, 139 F. Supp. 2d at 154-55; Southland Corp. v. Mir, et al., 748 F. Supp. 969, 983-84 (E.D.N.Y. 1990).  It is not necessary to reach this issue.

Defendants have moved to strike the Certification of Stephen J. Vaughan, Esq. and attached exhibits ("Vaughan Certification") which Dunkin' filed in support of its opposition to summary judgment. The Vaughan Certification and its attachments relate to the sufficiency of Dunkin's "proof" that defendants committed a felony of other crime injurious to Dunkin's goodwill. As the court is not presently required to determine this issue and Dunkin' is amenable to withdrawing the certification (see Docket # 123) the motion is allowed. The instant decision renders it unnecessary for Dunkin' to file substitute materials.

Accordingly, defendants' motion for summary judgment (Docket # 64) is DENIED. Defendants' motion to strike the Certification of Stephen J. Vaughan, Esq. (Docket # 110) is ALLOWED. Dunkin's motion to file materials on an impounded basis (Docket # 116) is DENIED AS MOOT. Defendant's motion for leave to file a reply memorandum (Docket # 124) is ALLOWED.

|  |  |
|---|---|
|    March 5, 2008    |    /s/Rya W. Zobel    |
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |